Filed 12/08/23

VERMONT SUPERIOR COURT
Environmental Division
32 Cherry St, 2nd Floor, Suite 303,
Burlington, VT 05401
802-951-1740
www.vermontjudiciary.org



Docket No. 22-ENV-00018

| | |
|---|---|
| **Ranney Dairy Farm, LLC**<br>**Major Subdivision Appeal** | **Merits Decision** |

This is an appeal of a major subdivision permit issued by the Town of Westminster Development Review Board (DRB) to Ranney Dairy Farm, LLC (Applicant) for a subdivision of land that it owns in the Town of Westminster, Vermont (Town). Neighbors Daniel Deitz, Steven Goulas, Sr., Veronica Goulas, Martha Moscrip, Nancy Pike, Michael Sylvester, and Teresa Sylvester (collectively, Neighbors) appeal the approval to this Court.[1]

This Court conducted a merits hearing via the WebEx platform on October 17, 2023 and October 18, 2023. The Court conducted a site visit on December 7, 2023 and made observations requested by the parties. The parties are reminded that the site visit is not evidence to be considered in rendering this decision, but rather it is to place the evidence received during trial into context.

Applicant is represented by Samuel H. Angell, Esq. Neighbors are represented by Fletcher D. Proctor, Esq. The Town is represented by Lawrence G. Slason, Esq.[2]

---

[1] Philip Ranney and Trisha Kneeland owned a parcel of land surrounded by Applicant's property and were part of the appellant group. By an order dated October 6, 2023, Mr. Ranney and Ms. Kneeland withdrew from this appeal because they sold their property. In re Ranney Dairy Farm, LLC, No. 22-ENV-00018 (Vt. Super. Ct. Envtl. Div. Oct. 6, 2023) (Walsh, J.). Mr. Ranney did, however, testify at the merits hearing in this matter.

[2] The Town did not participate in the Court's merits hearing. Instead, the Town provided a pre-trial memorandum of law for the Court's consideration.

**Statement of Questions**

Neighbors brought forward 16 Questions in their initial Statement of Questions. See Statement of Questions (filed on Feb. 22, 2022). Several Questions were resolved by pre-trial motions. Only Question 5 and Question 16 remain before the Court in full. These Questions ask:

> 5. Did the Applicant demonstrate that the development will have access to a public road or class 4 town highway as required by 24 V.S.A. § 4412(3) and the Westminster zoning and subdivision bylaws?
>
> . . .
>
> 16. Is there adequate access to the development sites by emergency services such as fire, rescue, and police as required by the Westminster zoning and subdivision bylaws?

Id. (as amended by Ranney Dairy Farm, No. 22-ENV-00018, slip op. at 3—4 (Oct. 28, 2022) (Walsh, J.)).

Question 6 remains before the Court in part, as clarified by this Court's June 30, 2023 decision. See Ranney Dairy Farm, No. 22-ENV-00018, slip op. at 6—8 (June 30, 2023) (Walsh, J.). It asks, generally, "[d]oes the plot plan filed by the Applicant conform to the site plan review requirements of 24 V.S.A. § 4416 and Westminster zoning and subdivision bylaws?" Id. In the Court's June 30, 2023 decision, the Court clarified that the only aspects of the Westminster Zoning and Subdivision Bylaws (the Bylaws) that remain at issue in Question 6 are Bylaws §§ 311(b)(1), (2) and (5). Id. These subsections address traffic concerns between the site and the streets (Bylaws § 311(b)(1)), traffic circulation within the development, including pedestrian concerns, parking and loading facilities (Bylaws § 311(b)(2)), and the adequacy of access for emergency services (Bylaws § 311(b)(5)).

**Findings of Fact**

1. Ranney Dairy Farm, LLC (previously defined as Applicant) owns property located at 700 Westminster West Road, Westminster, Vermont (the Property).

2. The Property has frontage on Westminster West Road, McKinnon Road, and Old Codding Road.

3. The Property is ±161.6 acres.

4. Applicant proposes to subdivide the Property into two residential lots, 6.8 acres and 13.45 acres, respectively, with a third retained lot of 141.27 acres (the Project). See Applicant Ex. 1 (Site Plan).

5. The two proposed residential lots are to be accessed off of Old Codding Road. Id.

6. The lots have 423 feet and 688 feet of frontage on Old Codding Road, respectively. Id.

7. Old Codding Road serves multiple residences, including Neighbors' residences.

8. Old Codding Road is a dirt road and is approximately 1 mile long.

9. Old Codding Road was a town road that was discontinued in the 1890s.

10. Old Codding Road is accessible by McKinnon Road, a public road.

11. Applicant does not have a deeded right of way to use Old Codding Road, nor did Applicant's predecessors in interest, Harold and Joyce Ranney.

12. Applicant's predecessors in interest used Old Codding Road for agricultural uses, including to access lower pastures on the farm.

13. When Applicant purchased the Property from the Ranneys, as a part of that sale, a portion of the Ranney's land was subdivided from the Ranney's larger parcel and given to the Ranney's son, Philip, and an easement was given over the Property to access Philip Ranney's new parcel.

14. This easement connected Philip Ranney's parcel to Old Codding Road and is the sole access to his land.

15. Philip Ranney built a home on that parcel and used Old Codding Road to access his home for approximately 18 years, until he sold the land.

16. At some point in the 1980s, Veronica Goulas sought financing to construct a home on Old Codding Road.

17. As a part of that approval process, the financial institution required her to obtain a deeded right of way over Old Codding Road. Ms. Goulas obtained that right of way.[3]

18. There is no evidence that right of way agreements were required for the use of Old Codding Road prior to the financial institution's request.

---

[3] The Court received no evidence as to the basis for the financial institution's request.

3

19. At least two residents of Old Codding Road, Jared Rolston and Applicant, do not have a deeded right of way over Old Codding Road.[4] The Ranneys did not have a deeded right of way to use Old Codding Road when they sold the Property to Applicant or when they subdivided off Philip Ranney's former parcel.

20. Mr. Rolston uses Old Codding Road to access his home, as do his tenants.

21. Old Codding Road has been maintained by various residents over the years.

22. Routine maintenance is regularly performed on the road, such as grading, filling potholes and repairing ditching.

23. Old Codding Road is plowed in the winter as needed.

24. Road improvements have also been made, including widening, adding gravel to the roadbed, and improving drainage, which has included the addition of culverts.

25. Presently, cars can pass each other on Old Codding Road, provided that one car moves to the side of the road.

26. In connection with the Project, on the north side of Old Codding Road, along the retained lot, Applicant proposes to install two pull-offs to facilitate easier passage along the road, one approximately 280 feet from the road's intersection with McKinnon Road and another approximately 500 feet further east along Old Codding Road from the first pull-off. See Ex. 1 (Site Plan).

27. There is an additional area approximately 500 feet east of the second pull-off that may be used as a pull-off but is not specifically designed as such, as it is just a gap in the agricultural stone wall on the retained lot. Id.

28. New pull-offs will be created as graveled areas and, along with the existing gap in the stone wall, are areas where one car can move over to allow another car to move past, as well as providing options for emergency services responding to calls on Old Codding Road.

29. The proposed house sites will each be accessed by existing driveways from Old Codding Road. See Ex. 1. Each driveway is the only traffic and/or pedestrian infrastructure proposed for each lot. Id.

---

[4] Philip Ranney never had a deeded right of way over Old Codding Road during his ownership of this former parcel. It would appear to the Court that his successors in interest similarly lack such an agreement.

4

30. Because the lots are to be developed as single-family homes, there are no concerns with traffic circulation on-site, including as needed for emergency vehicles.

31. No pedestrian facilities are proposed.

32. The Project is served by the Town of Westminster Fire Department (the Department) for emergency services.

33. In the 1980s, Dan Dietz was involved in a significant snowmobile accident at the terminus of Old Codding Road, beyond Mr. Rolston's house, which is the last house on the road, during a significant winter ice storm.

34. When responding to the accident, the ambulance could not travel on Old Codding Road beyond the Project.

35. In 1995, Mr. Rolston's residence caught fire and was destroyed. This residence is located at the end of Old Codding Road and is the last house on the road.

36. The Department reached the Rolston property but was not able to save the house from destruction.

37. Cole Streeter, the Department's Fire Chief, testified at trial. He has decades of experience with the Department, including serving as its current Fire Chief for the past 19 years and as its Deputy Fire Chief.

38. During Chief Streeter's tenure, the Department has responded to emergency calls on Old Codding Road other than those identified above without any incident, including homes located further down Old Codding Road than the Project.

39. In recent years, the Department has made upgrades to its emergency vehicles which better prepare it for accessing properties in inclement weather, on rough roads, or off-road. These upgrades include new specialized chains for emergency vehicles, an off-road rescue vehicle, a rescue trailer, and a snowmobile with a rescue sled.

40. The Town will also dispatch sand trucks to roads in the event of an emergency in snow, this includes sending trucks to private roads.

41. With the improvements to the Department's vehicles and continued maintenance of Old Codding Road, there are no concerns with access for emergency services at Old Codding Road.

42. On January 3, 2022, the Town DRB approved the Project.

43. Neighbors subsequently appealed that approval to this Court.

## Conclusions of Law

I.  **Question 5: Applicant's Use of Old Codding Road**

Bylaws § 310(A)(10) requires that a property have access to a public road or class 4 town highway. It is undisputed that Old Codding Road is not a public road or Town highway. Applicant's right to use Old Codding Road is disputed by the Neighbors.

The Environmental Division of the Vermont Superior Court is a Court of limited jurisdiction. 4. V.S.A. § 34. As such, the Court's jurisdiction is limited to: "(1) jurisdiction of matters arising under 10 V.S.A. chapters 201 and 220; (2) jurisdiction of matters arising under 24 V.S.A. chapter 61, subchapter 12 and chapter 117; and (3) original jurisdiction to revoke permits under 10 V.S.A. chapter 151." Id. This Court is without jurisdiction to opine on issues outside the scope of the Court's jurisdiction, including matters under Title 19 and the general adjudication of private property rights. In re Woodstock Cmty. Tr. & Hous. Vt. PRD, 2012 VT 87, ¶ 40, 192 Vt. 474 ("[T]he Environmental Division does not have jurisdiction to determine private property rights."). It is, however, within the Court's jurisdiction to consider threshold showings of private property interests. See e.g., In re Leiter, No. 85-4-07 Vtec, slip op. at 4—5 (Vt. Envtl. Ct. Jan. 2, 2008) (Durkin, J.).

The evidence presented by the Applicant achieves a threshold showing that the Project has access to a public road over Old Codding Road. Old Codding Road was laid out as a town highway and was subsequently discontinued.[5] In the period since it's discontinuance, Applicant's predecessors in interest continually used Old Codding Road for agricultural uses. Additionally, Philip Ranney, who shares the same predecessors in interest as Applicant, used Old Codding Road to access his residence. Philip Ranney's use of Old Codding Road for residential purposes is particularly helpful to guide the Court's review in this matter. Philip Ranney is the son of Applicant's predecessor in interest, Harold and Joyce Ranney, and the Property shares a common

---

[5] Neighbors dispute the accuracy and effect of the Town's laying out of Old Codding Road, including the length of the road and its description. Again, this Court is without jurisdiction to interpret the laying out of Old Codding Road and the documents associated with this process or its discontinuance. This Court can only determine whether Applicant has made a threshold showing that it has the ability to use Old Codding Road for access. Should Neighbors seek to dispute this interest, they can seek remedies that may be available to them in the Civil Division.

history to Philip Ranney's former property. Specifically, as a part of Applicant's purchase of the Property from the Ranneys, Philip Ranney's former parcel was subdivided from the Ranney's larger lot, with the remainder becoming the Property under Applicant's ownership. Philip Ranney's former parcel, on which he built his residence, is wholly surrounded by the Property. He accessed his then-residence by an easement over the Property to Old Codding Road. Old Codding Road is the sole access to Philip Ranney's former property, which he used for approximately 18 years without incident. Philip Ranney did not obtain a deeded right of way over Old Codding Road to access his driveway during his ownership. His parents also did not have a deeded right of way when they subdivided his parcel off from their larger parcel. Neighbors do not appear to dispute the fact that Philip Ranney and his family could use Old Codding Road as access to their residence. Based on these facts, it is axiomatic in the context of this zoning appeal that if Philip Ranney's former parcel retained the right to use Old Codding Road, Applicant also has made a threshold showing that it has the same right as Mr. Ranney.

Further, we are unconvinced that the practice of obtaining rights of way by residents of Old Codding Road is evidence that use of Old Codding Road requires such a right of way agreement. This practice began when Ms. Goulas was required by her mortgage lender to provide it with such an agreement in order to obtain financing from the lender in the 1980s. Prior to this third-party lender's request, it appears that residents, including Ms. Goulas' family, did not require right of way agreements to use Old Codding Road. Thus, Neighbors argument that a lack of an express right of way agreement is fatal to the right to use Old Codding Road is unavailing.[6]

When looking at the totality of the evidence presented, Applicant has made the threshold showing required for this Court to conclude that the Project has the right to use Old Codding Road for access to the Project. We therefore answer Question 5 in the affirmative.

II.      **Questions 6 and 16: Emergency Access**

---

[6] We note that Neighbor's assertion is further undercut by the fact that Old Codding Road has been used for access to the Property for agricultural uses and for residential uses by Mr. Rolston and his tenants as well as by Mr. Ranney and his family, as addressed above.

Neighbors' Question 16 asks whether there is adequate access for emergency services to the Project. This issue is also raised in Question 6, which addresses the specific citation to the Bylaws provision requiring safe access for emergency vehicles, § 311(b)(5).[7]

Bylaws § 311(b)(5) requires that the DRB, or this Court on review, "consider" whether the Project has "adequa[te] . . . access for the use of emergency services, such as fire, rescue, and police[.]"

Old Codding Road is a dirt road. It is maintained by various residents, with maintenance including repairing potholes and ditches and grading the road as needed, as well as winter plowing. Over the years, improvements have been made to Old Codding Road, including road widening, the installation of culverts and other drainage, and the addition of gravel. The road is relatively narrow in parts. The Project proposes to install two pull-offs on the north side of Old Codding Road, allowing vehicles to pull over to pass one another.[8]

Cole Streeter, the Town Fire Chief, is familiar with the conditions of Old Codding Road and the Project. In Chief Streeter's professional experience in this role, as well as many other roles with the Department, he opines that Old Codding Road provides adequate access for emergency vehicles. The Department has, in his tenure with the Department, responded to emergency calls on Old Codding Road without incident. Chief Streeter also testified about improvements that have been made over time to the Town's emergency services infrastructure. This includes new specialized tire chains, off-road rescue vehicles and capabilities, and rescue trailers. These improvements allow the Department to serve residents in inclement weather, and along rough terrain.

Neighbors directed the Court's attention to two emergencies occurring in the 1980s and 1990s, respectively. In the 1980s, a snowmobile accident involving Mr. Dietz occurred at the terminus of Old Codding Road near Mr. Rostlon's house, beyond the proposed Project sites. This

---

[7] Neighbors post-trial brief does not direct this Court to any other provision of the Bylaws that they assert is applicable to this issue. In a previous brief in opposition to Applicant's motion for summary judgment, Neighbors directed the Court to Bylaws § 850(A). That subsection, however, is related to the laying out of roadways and intersections within a subdivision. Bylaws §§ 850, 850(A). Old Codding Road is not a roadway within the subdivision. Thus, Bylaws § 311(b)(5) is the relevant provision. Further, despite Question 6 partially addressing 24 V.S.A. § 4416, this statute generally addresses site plan review and contains no specific standards relative to emergency access.

[8] An additional pull off is provided by a gap in the Property's agricultural wall, though it is not specifically designed as such.

emergency occurred during a significant winter weather event and, as a result, the ambulance could not travel on Old Codding Road beyond the Project site. Next, in 1995, there was a fire at Mr. Rostlon's house. While the Department reached the home, it could not save the structure before it was destroyed. While these events are significant, they do not require a conclusion that Old Codding Road is presently inadequate for emergency services access. The evidence presented demonstrates that Old Codding Road is a maintained private road. Furthermore, the Department has sufficient resources to traverse it in various weather conditions, as demonstrated by the Department's upgrades to its vehicles and service to Old Codding Road in the period since these two historic events.

For these reasons, we conclude that Applicant has demonstrated that the Project has adequate access for emergency services. Therefore, we answer Question 16 and the aspect of Question 6 that addresses this issue in the affirmative.

III.     **Question 6: Bylaws § 311(b)(1), (2)**

The remainder of Question 6 addresses the Project's compliance with Bylaws §§ 311(b)(1) and (2). Section 311(b)(1) addresses "[t]raffic access and safety of traffic between the site and the streets." Section 311(b)(2) addresses "[s]afety and adequacy of traffic circulation within the development, including pedestrian safety, and parking and loading facilities."

First, to the extent that either of these subsections address the safety of Old Codding Road as access to the Project's lots, for the same reasons as set forth in Section II, we conclude that Applicant complies with these provisions. The Project proposes two new residences on Old Codding Road, which presently serves multiple residences, including each of the Neighbors' homes. Neighbors do not appear to contend that Old Codding Road is insufficient for their own residential use. The Project includes three pull-offs along the portion of Old Codding Road between its intersection with McKinnon Road and the first Project lot. This will improve traffic flow along the road by allowing safer passage when two vehicles are on the road. Further, there is no evidence that additional traffic from these two residents on Old Codding Road will result in access or safety concerns.

Second, the Court interprets §§ 311(b)(1) and (2) as addressing on-site impacts. See Bylaws § 311(b)(1) (addressing traffic access and safety concerns as "<u>between the site and the</u>

9

streets"); Bylaws § 311(b)(2) (addressing traffic safety and circulation "within the development"); see also In re Appeal of Trahan, 2008 VT 90, ¶ 19, 184 Vt. 262 (noting that we apply the rules of statutory construction when interpreting zoning regulations and, in so doing the Court "construe[s] words according to their plain and ordinary meaning, giving effect to the whole and every part of the ordinance."). The Project proposes a driveway on each lot to access each house site. These driveways are sufficient to serve the residential purposes of the lots, including safe access between the sites and Old Codding Road, and safe traffic circulation and parking on the lots.[9] Neighbors do not raise issues related to on-site impacts addressed by Bylaws §§ 311(b)(1) and (2).

For these reasons, we conclude that Applicant has demonstrated compliance with Bylaws §§ 311(b)(1) and (2). We therefore answer the remainder of Question 6 in the affirmative.

## Conclusion

For the foregoing reasons, we conclude that Applicant has made a threshold showing that it may use Old Codding Road to access the Project. Additionally, we conclude Applicant has demonstrated that Old Codding Road is adequate for emergency services, satisfying Bylaws § 311(b)(5). Finally, Applicant has demonstrated that the Project has sufficient traffic access, safety, and circulation and satisfies Bylaws § 311(b)(1) and (2).

This concludes the matter before the Court. A Judgment Order accompanies this Decision.

Electronically signed December 8, 2023 in Burlington, Vermont pursuant to V.R.E.F. 9(D).

Thomas G. Walsh, Judge
Superior Court, Environmental Division

---

[9] Because these are single-family home lots, there are no pedestrian or loading facilities proposed.